By the Court.—Freedman, J.
The main question involved is one arising under the law as to the application of payments. The law upon this point is well settled. The debtor, when he makes the payment, has the right to direct the application, because it is his money which is being paid. If he fails to make any *176 application, the creditor may make it. If none is made by the parties, then the court directs such application as, in equity and justice, and under all the circumstances, should be made.
In the class of cases in which the law makes the application, the position of a surety sometimes presents the strongest equity; sometimes an unsecured debt is preferred over a secured one ; and sometimes the application is made to the debt of the longest standing in the account. Each case falling within this class turns upon its own facts.
In the case at bar there is no proof that any application was made by the debtor at the time of the payment. Hence, none could be made by the debtor’s agent thereafter, and no effect can be given to his subsequent declarations.
The action is brought upon a contract of guaranty. By that the defendants jointly and severally guaranteed the payment, at maturity, of any and all bills of exchange or drafts that might be drawn at sixty days’ sight by the agent of the American Guano Company at Honolulu (Mr. E. P. Adams) on said company in New York, between August 1,1878, and, July 31, 1879, provided that the amount guaranteed should not, at any one time, exceed the sum of $13,000, in gold coin.
The draft in suit was drawn June 30, 1879, at sixty day’s sight, on said company in New York, for the sum of $13,000; indorsed and delivered, for value and before maturity, by Bishop & Co., of Honolulu, the payees .therein named, to the plaintiff, who is now the lawful owner and holder thereof; presented July 25, 1879, for acceptance, to the drawee, at its office in the city of New York ; accepted, and made payable at the office of the drawee ; and at maturity duly presented for payment and duly protested for non-payment. Thereupon the plaintiff demanded of the defendants that they should pay the draft, which they refused to do. All other drafts that had been drawn by said *177 Adams prior to June 30, 1879, was paid at maturity, but there was another and similar draft drawn July 7, 1879, for $8,000, which was also allowed to go to protest.
Now as to the payment which the defendants claim the court should properly apply, the proof simply amounts to this. At a certain time the agents of the plaintiff in the city of New York, who held both protested drafts, were notified by Bishop & Co., of Honolulu, the payees and indorsers of said drafts, that they, Bishop & Co., had received the sum of $2,144, and that plaintiffs’ agents should credit said sum on account of the $8,000 draft, because there was no security for such draft, and that, pursuant to such direction, plaintiffs’ agents made the required application.
I am inclined to think that this sufficiently established an application by the creditor which the creditor, in the absence of a contrary application by the debtor at the time of the payment, had a right to make. Though it occurred after suit brought upon the $13,000 note, it was done as soon as it could be done. Moreover, the application thus made harmonized with the intentions of the parties to the contract of guaranty at the time of the execution of that instrument. For by it a continuous line of credit was given by the defendants to the extent of $13,000, and the evident intention of the parties to it was that such credit might at all times within the period named be used to the extent of the limit assigned. The draft in suit formed part of such credit, while the $8,000 draft was drawn in excess thereof.
I am unable to discover any merit in any of the exceptions ; and all credits in favor of the draft in suit to which it is entitled, having been allowed, the direction of the verdict should be sustained, and the judgment affirmed, with costs.
Russell, J., concurred.